### RACHEL CAMERON *v.* JON ALANDER, COMMISSIONER OF HUMAN RESOURCES
### (13600)

Schaller, Spear and Hennessy, Js.

Argued June 5—decision released September 12, 1995

*Lawrence W. Berliner*, for the appellant (plaintiff).

*Peter L. Brown*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, and *Jennifer C. Jaff*, assistant attorneys general, for the appellee (defendant).

HENNESSY, J. The plaintiff appeals from the judgment of the trial court dismissing her appeal from the decision of the department of human resources (department)[1] to terminate benefits under its community based services program. A hearing officer terminated benefits pursuant to the department's regulations. The plaintiff asserts that the regulations in question exceed the statutory authority of the department and violate state and federal law because they discriminate against her on the basis of disability. We affirm the judgment of the trial court.

The relevant facts are not in dispute. The plaintiff is a person with disabilities in that she suffers from agoraphobia, panic disorder and depression. In March, 1986, the department began paying the plaintiff $267.89

---

[1] Effective July 1, 1993, the department of human resources was succeeded by the department of social services. General Statutes § 17b-1. Unless otherwise specified, references in this opinion are to the department of human resources.

per month under its community based services program to allow the plaintiff to procure assistance with household chores, transportation and tasks of adult daily living. The plaintiff's husband provided these services, and he has received professional training in the provision of these services to mentally disabled persons such as his wife.

In August, 1992, the regulations governing the community based services program were changed. The new regulations specified that service providers for whom payments would be made by the department did not include "legally liable relatives." Regs., Conn. State Agencies § 17-570-1 (w) (1).[2] A spouse was defined as a legally liable relative. Regs., Conn. State Agencies § 17-570-1 (o).[3] Pursuant to the new regulations, the department informed the plaintiff that payments to her for services provided by her husband would cease.

The plaintiff requested and was granted a fair hearing. At the hearing the plaintiff submitted a letter from her physician, Harry E. Morgan, who had treated her for the last nine years. Morgan stated that if the plaintiff's husband stopped providing twenty-four hour care and the responsibility was given to an outside person, the plaintiff was at great risk of decompensating and developing acute symptoms that could lead to hospitalization.

At the close of the hearing, the hearing officer concluded that there was no violation of the controlling

[2] Section 17-570-1 (w) of the Regulations of Connecticut State Agencies provides: " 'Service Provider' means one who provides Community-Based Services but does not include:

"(1) legally liable relatives or

"(2) other relatives who are members of the recipient's household unless they have suffered a demonstrable loss of income as a result of providing such services."

[3] Section 17-570-1 (o) of the Regulations of Connecticut State Agencies provides: " 'Legally liable relative' means either a spouse or a parent of a child under the age of 18."

statutes or regulations. In the unique circumstances of this case, however, the hearing officer stayed the denial of the plaintiff's appeal pending the defendant commissioner's consideration of whether to grant an administrative exception to the operation of the regulations.

On April 6, 1993, the defendant notified the plaintiff that the request for an administrative exception was denied because "[t]he governing regulations do not contain any provisions authorizing [a waiver of] the requirements of the regulations." The plaintiff appealed the order terminating payments to the Superior Court. By memorandum of decision dated April 25, 1994, the trial court dismissed the plaintiff's appeal. This appeal followed.

I

The plaintiff first contends that the regulations under which her community based services payments were terminated are inconsistent with General Statutes (Rev. to 1991) § 17-571 (b)[4] and General Statutes § 17b-606

---

[4] General Statutes (Rev. to 1991) § 17-571 (b) provides in relevant part: "The department shall (1) provide appropriate services to individuals and families as needed through direct social work services rendered by the department and contracted services from community-based organizations funded by the department . . . ."

This statute was repealed, effective July 1, 1993, pursuant to No. 93-262, § 86, of the 1993 Public Acts. The legislature provided, however, in § 1 (d) of this public act that "[a]ny order or regulation of the . . . department of human resources . . . which is in force on July 1, 1993, shall continue in force and effect as an order or regulation of the department of social services until amended, repealed or suspended pursuant to law. . . ." Thus, the regulations at issue in this case remain operative despite the legislature's repeal of General Statutes §§ 17-570 and 17-571.

"Upon review of agency action taken under statutes which were repealed after the action was taken but before review, the repeal of a statute does not operate to impair or otherwise affect rights which have been vested or accrued while the statute was in force. Where a new statute continues in force provisions of an old statute a right of action created by the old statute is not destroyed." 2 Am. Jur. 2d, Administrative Law § 621 (1994). In this case the actions by the agency, including the decision of the hearing officer, all took place before July 1, 1993, the effective date of §§ 1 and 86 of Public

(a).[5] The trial court held that the regulations excluding services provided by the plaintiff's spouse from reimbursement under the community based services program were "not inconsistent with the department's broad mandate to coordinate the delivery of services to disabled persons." The plaintiff asks us to find this conclusion to be erroneous as a matter of law. We decline to do so.

"It is well established that 'an administrative agency's regulations are presumed valid and, unless they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute.' *Travelers Ins. Co.* v. *Kulla*, 216 Conn. 390, 399, 579 A.2d 525 (1990). Moreover, '[a] person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant.' Id." *Mass* v. *United States Fidelity & Guaranty Co.*, 222 Conn. 631, 649, 610 A.2d 1135 (1992).

The new regulations, including the limitation on service providers to exclude legally liable relatives, are consistent with the mandate of § 17-571 (b) to provide appropriate services to individuals with disabilities and their families and with the mandate of § 17b-606 (a) to be the lead agency in coordinating the delivery of such services. The regulation in question does not curtail services; it merely restricts the individuals who may provide services that will be reimbursed.

The trial court's conclusion that the challenged regulation is consistent with the statutory mandate is further

Acts 1993, No. 93-262. Therefore, we conclude that the trial court properly included § 17-571 in it analysis of whether § 17-570-1 (w) (1) is inconsistent with its authorizing statute. We also find it proper to consider § 17-571 in our analysis of whether the new regulations exceed the department's statutory authority.

[5] General Statutes § 17b-606 (a) (formerly § 17-606 [a]) provides in relevant part: "The department of [human resources] shall be the lead agency for services to persons with physical or mental disabilities and shall coordinate

supported by the fact that the regulation met with the approval of the legislative regulation review committee. General Statutes § 4-170 (b) provides that "[n]o adoption, amendment or repeal or any regulation . . . shall be effective until . . . the regulation has been approved by the committee . . . ." In light of this mandate, the approval of a regulation by the legislative regulation review committee supports the conclusion that the contested regulation is consistent with its statutory authority. *Dugas* v. *Lumbermens Mutual Casualty Co.*, 217 Conn. 631, 643, 587 A.2d 415 (1991); *Caldor, Inc.* v. *Heslin*, 215 Conn. 590, 599, 577 A.2d 1009 (1990), cert. denied, 498 U.S. 1088, 111 S. Ct. 966, 112 L. Ed. 2d 1053 (1991).

We conclude that the trial court's finding that the challenged regulation is not inconsistent with the department's statutory authority is correct.

## II

The plaintiff next asserts that the new regulations discriminate against her on the basis of her disability in violation of General Statutes § 46a-71 (a),[6] the equal protection clause of the state constitution,[7] the Rehabilitation Act of 1973; 29 U.S.C. § 701 et seq.;[8] and the

the delivery of such services by all state agencies servicing persons with disabilities."

[6] General Statutes § 46a-71 (a) provides in relevant part: "All services of every state agency shall be performed without discrimination based upon . . . mental retardation, learning disability or physical disability, including, but not limited to, blindness."

[7] Article first, § 20, of the Connecticut constitution as amended by article twenty-one of the amendments provides in relevant part: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of . . . physical or mental disability."

[8] Section 794 of title 29 of the United States Code provides in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

Americans with Disabilities Act of 1990 (ADA); 42 U.S.C. § 12101 et seq.[9] The trial court decided this claim on the basis that the regulation is "a limitation on the program, not on the disabled person's access to it." The plaintiff claims that this conclusion was improper. We disagree.

A necessary element of a claim under each of those provisions is that the challenged regulation discriminate on the basis of a disability. See, e.g., *Alexander* v. *Choate*, 469 U.S. 287, 302, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985); *Foti* v. *Richardson*, 30 Conn. App. 463, 468–69, 620 A.2d 840 (1993). Under each provision, the burden is on the plaintiff to establish that she has been discriminated against on the basis of disability. Only after the plaintiff makes such a prima facie case does the burden shift to the defendant to establish some justification for the discriminatory treatment.

Here, although the plaintiff is a disabled person who would be entitled to protection under each of the cited provisions, she has failed to meet her initial burden of demonstrating discrimination based on her disability. The revised definition of "service provider" in connection with the community based services program to exclude legally liable relatives does not exclude people from coverage on the basis of either disability in general or any specific disability. The plaintiff, in fact, remains eligible to receive payments under that program to the same extent as all other persons. She must simply comply with the threshold requirement that her service provider not be a legally liable relative.[10] Thus, the new

---

[9] The ADA, codified at 42 U.S.C. § 12132, provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

[10] Although the plaintiff may not, owing to the unique features of her situation, be able to obtain the fullest benefit of the community based services program, the defendant is not required to regulate the program to

limitation of the definition of "service provider" for the community based services program does not constitute discrimination on the basis of disability.

In the absence of a finding that the challenged regulation discriminates on the basis of disability, the regulation is subject to rational basis scrutiny under the equal protection clause of our state constitution. *Harbor Ins. Co.* v. *Groppo*, 208 Conn. 505, 508–509, 544 A.2d 1221 (1988). "Under the rational basis test, the court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way." (Citations omitted; internal quotation marks omitted.) Id., 509.

The challenged regulation does not make any group of disabled persons ineligible for community based services payments. Instead, it merely limits payments to reimbursement of service providers who are not legally liable relatives. In this way, the new regulation frees some funds to provide services to additional clients without jeopardizing the services provided to clients by legally liable relatives, who will probably continue to provide services despite the lack of reimbursement. Because the program was intended to provide otherwise unavailable services, and not to supplement household income, it is a reasonable limitation to exclude legally liable relative service providers from reimbursement.

We conclude that the plaintiff has failed to show that the new regulations violate the state equal protection clause or antidiscrimination statutes, the Rehabilitation Act of 1973, or the ADA. We also conclude that under the equal protection clause of the state constitution

allow every person with disabilities to receive the maximum advantage. See *Alexander* v. *Choate*, supra, 469 U.S. 303.

the challenged regulations are subject to rational basis review, and must be found valid.

The judgment is affirmed.

In this opinion the other judges concurred.