[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The appellants Stewart J. Leonard and Marianne Leonard d/b/a Stew Leonard's and Stew Leonard's Norwalk Dairy, Inc. a/k/a Stew's Norwalk Limited Partnership d/b/a Stew Leonard's, appeal from an Order entered by Gloria Schaffer, Commissioner of the Department of Consumer Protection, State of Connecticut. CT Page 11139
The appellants operate a grocery store at 100 Westport Avenue, Norwalk, Connecticut. The appellee, Department of Consumer Protection, is an administrative agency of the State of Connecticut and Gloria Schaffer is the Commissioner of the Department of Consumer Protection.
On or about August 9, 1993, the Commissioner issued an Administrative Complaint charging the appellants with violations of Conn. Gen. Stat. § 42-115k, § 43-9, and §42-110b.
The complaint alleged that inspections conducted by inspectors from the Department of Consumer Protection Weights and Measures Division showed packages of grocery items allegedly marked incorrectly as to the net quantity of the contents in terms of weight, measure or count.
On December 1, 2, 7, 8 and 22, 1993, the matter was heard as a contested case before the Department of Consumer Protection's designated hearing officer, Deputy Commissioner Trudi Bird and briefs were filed on January 31, 1994. On April 28, 1994, Hearing Officer Trudi Bird issued a Proposed Order in which she proposed that all counts of the administrative complaint served on the appellants herein be dismissed.
On July 22, 1994, the Commissioner entered a Final Decision and Order wherein the Commissioner overruled the proposed order submitted by Hearing Officer Deputy Commissioner Trudi Bird in two respects and ordered the appellants to pay a civil penalty of thirteen thousand nine hundred dollars ($13,900.00) pursuant to Connecticut General Statutes, section 42-115u.
In its Decision and Final Order, the Commissioner concluded that during an inspection of appellant's store on July 15, 1993, 109 packaged food products did not declare a quantity of both weight and count. She claimed that the absence of a declaration of both weight and count violates Conn. Gen. Stat. §§ 42-115j, 42-115k, 42-115u, 43-9 and Section 42-115j-5(c) of the Regulations of Connecticut State Agencies. She further found that pursuant to § 42-115u(b), the absence of a declaration of both weight and count on said CT Page 11140 packages is deemed an unfair trade practice in violation of Conn. Gen. Stat. § 42-110b. She imposed a civil penalty of $100.00 for each of the 109 packages that allegedly did not have a declaration of both weight and count.
Also in her Decision and Final Order, the Commissioner concluded that during an inspection of appellant's store on July 15, 1993, the labeled weight on 30 packaged food products varied from the weight recorded by state inspectors. She claimed that said variation violates Conn. Gen. Stat. § 42-115k,42-115u, and 43-9. She further found that pursuant to § 42-115u(b), the alleged weight variation on said packages is deemed an unfair trade practice in violation of Conn. Gen. Stat. § 42-110b. Appellee seeks to impose a civil penalty of $100.00 for each of said 30 packaged food products.
The Commissioner's final order states as follows:
"1. It is hereby ordered, that Respondent, pursuant to General Statutes § 42-115u, pay a civil penalty of $100.00 for each one of the 30 packaged food products that were actually weighed and found to exceed the -.005 variation standard in the sampling that took place on July 15, 1993.
"2. It is hereby further ordered that the Respondent, pursuant to General Statutes § 42-115u, pay a civil penalty of $100.00 for each of the 109 packaged food products that failed to declare a quantity of both weight and count during the inspection of Respondent's store on July 15, 1993."
The scope of review of an administrative appeal is governed by the Uniform Administrative Procedure Act, specifically General Statutes § 4-183(j). Review of an appeal taken from a decision of an administrative agency such as the Department of Consumer Protection is limited to determining whether the agency's findings are supported by substantial and competent evidence and whether the agency's decision exceeds its statutory authority or constitutes an abuse of discretion.State v. Commission on Human Rights Opportunities, 211 Conn. 464,477 (1989). "`Ultimately, the question is not whether the trial court would have reached the same conclusion but whether the record before the [agency] supports the action taken.'" Miko v. Commission on Human Rights Opportunities,220 Conn. 192, 201 (1991) citing Williams v. Liquor ControlCommission, 175 Conn. 409, 414 (1978). CT Page 11141
The Commissioner found that during the inspection of the Appellant's store on July 15, 1993 the Department's inspectors found that each of 109 food products only disclosed a quantity of either weight or count, rather than both weight and count. Exhibit 1-c. These consisted of the following:
9 packages Cheese platters
15 packages Fresh Clam Strips
17 packages 1/2 Seedless Watermelons
22 packages Cored Pineapples
20 packages Sliced Watermelon
26 packages Lobster Bisque
The Commissioner further found that during the inspection of the appellant's store on July 15, 1993 the labeled weight of the following 30 packaged food products varied from the weight recorded by state inspectors by at least .005 per pound.
3 packages Potato Salad
8 packages Shrimp Pasta
5 packages Ice Cream Toppings
10 packages Smoked Nova
4 packages Chopped Chicken Liver
These findings are found in Exhibit 1-c.
The issue before the court is whether the Commissioner was correct when she failed to sustain the hearing officer's proposal that all counts of the administrative complaint be dismissed. The appellants have raised the following issues:
First: They claim that the hearing officer's findings are binding on the Commissioner. The court disagrees. Section 21a-1-28a(a) of the Regulations of State Agencies CT Page 11142 provides: "The final decision or order in a contested case shall be rendered by the Commissioner after due consideration of the entire record . . ." If a commissioner's final decision is supported by substantial evidence, it will not be overturned merely because a hearing officer might have reached a different conclusion. A standard of review is "not to the decision of the hearing officer but, rather, to the decision of the commissioner, because he is the final decision maker."Newtown v. Keeney, 234 Conn. 312, 320. Exhibit 1-c clearly supports the commissioner's findings as set forth above.
Second: Appellants claim that the Department seeks to impose civil penalties on all packages where the variation in weight exceeded five one-thousandths (.005) of a pound. They claim that the imposition of fines based on this method is completely inconsistent with the mandatory allowance of reasonable variations.
Sections 42-115g through 42-115u of the General Statutes of Connecticut govern the sale of commodities in package form. Pursuant to § 42-115h, the Commissioner is required to "weigh or measure and inspect packages or amounts of commodities kept, offered or exposed for sale, sold or in the process of delivery to determine whether the same contain the amounts represented and whether they are kept, offered or exposed for sale, or sold in accordance with law." If the Commissioner determines that packages do not contain the contents represented, the Commissioner, pursuant to § 42-115h, may order the deficient items "off sale." In addition, pursuant to § 42-115u, the commissioner may impose a civil penalty against the offending retailer.
Section 41-115k provides in pertinent part as follows:
 ". . . [a]ny commodity in package form introduced or delivered for introduction into or received in intrastate commerce, kept for the purpose of sale, or offered or exposed for sale in intrastate commerce shall bear on the outside of the package such definite, plain and conspicuous declarations of (1) the identity of the commodity in the package unless the same can easily be identified through the wrapper or containers, (2) CT Page 11143 the net quantity of the contents in terms of weight, measure or count provided under said subdivision (2) the commissioner shall, by regulation, establish (A) reasonable variations to be allowed, which may include variations below the declared weight or measure caused by ordinary and customary exposure, only after the commodity is introduced into intrastate commerce, to conditions that normally occur in good distribution practice and that unavoidably result in decreased weight or measure . . ."
Section 42-115j-8 of the Regulations of State Agencies provides in pertinent part as follows:
 "Variations to be allowed. (a) Packaging variations. (1) Variations from declared net quantity. Variations from the declared net weight, measure or count shall be permitted when caused by unavoidable deviations in weighing, measuring or counting the contents of individual packages that occur in good packaging practice, but such variations shall not be permitted to such extent that the average of the quantities in the packages of a particular commodity comprising either a shipment or other delivery of the commodity, or a lot of the commodity that is kept, offered or exposed for sale, or sold, is below the quantity stated, and no unreasonable shortage in any package shall be permitted, even though averages in other packages in the same shipment, delivery or lot compensate for such shortage. Variations above the declared quantity shall not be unreasonably large. (2) Variations resulting from exposure. Variations from the declared weight or measure shall be permitted when caused by ordinary and customary exposure to CT Page 11144 conditions that normally occur in good distribution practice and that unavoidably result in change of weight of measure, but only after the commodity is introduced into intrastate commerce; provided the phrase "introduced into intrastate commerce" as used in this subdivision shall be construed to define the time and the place at which the first sale and delivery of a package is made within the state, the delivery being either (A) directly to the purchaser or to his agent, or (B) to a common carrier for shipment to the purchaser, and this subdivision shall be construed as requiring that, so long as a shipment, delivery or lot of packages of a particular commodity remains in the possession or under the control of the packager or the person who introduces the package into intrastate commerce, exposure variations shall not be permitted." Emphasis added.
Contrary to the appellant's claim, the Statute and Regulations do not require that the Commissioner allow any variations between the weight declared on the label and the actual weight of the items packaged and sold at the appellants' stores.
Section 42-155j-8(a)(2) regulates two different situations pertaining to when commodity weight variations may or may not be allowed. The first situation allows variations resulting from exposure which occurs only after the commodity is introduced into intrastate commerce. In the second situation exposure variations are not allowed so long as a shipment, delivery or lot of packages of a particular commodity remains in the possession or under the control of the packager. Here the appellants fall within the second situation. The packages involved remained in the possession and under the control of the appellants when they were examined.
Appellants claim that even if a ".005 variation standard" did exist it would not satisfy the statutory mandate to allow CT Page 11145 "reasonable variations" in weight. The court disagrees. As stated above no variation was required because the appellants packaged and sold the food at the same location.
However, the inspectors did in fact allow the .005 variation to account for the difference between the scales that the department uses which go to the three decimal points and the scales which grocery stores normally use which only go to two. Thus, the use of the .005 variation was in fact to the appellant's benefit.
Third: The appellants claim that the Commissioner was in error when she concluded that 109 packaged food products should have declared a quantity of both weight and count. Appellants claim the Department exceeded its statutory authority in requiring declarations of both weight and count. The court disagrees. General Statute § 42-115k states:
"Except as otherwise provided in Section 42-115g to 42-115q, inclusive, any commodity in packaged form introduced or delivered for introduction into or received in intrastate commerce, kept for the purpose of sale, or offered or exposed for sale in intrastate commerce shall bear on the outside of the package such definite, plain and conspicuous declarations of (1) the identity of the commodity in the package unless the same can easily be identified through the wrapper or containers, (2) the net quantity of the contents in terms of weight, measure or count . . ." The court finds that the word "or" appearing in said statute should be construed as "and" where such a construction will carry out the legislative intent. D'Occhio v. Connecticut Real Estate Commission,189 Conn. 162, 170 (1983).
Section 42-115j states in pertinent part:
"Commodities in liquid form shall be sold only by liquid measure or by weight, and except as otherwise provided in sections 42-115g to 42-115q, inclusive, commodities not in liquid form shall be sold only by weight, by measure of length or area or by count; provided liquid commodities may be sold by weight and commodities not in liquid form may be sold by count only if such methods give accurate information as to the quantity of commodity sold . . ." Section 42-115j-5(c) of the Regulations of State Agencies provides in pertinent part: CT Page 11146
". . . (2) Combination declaration; count. A declaration quantity in terms of count shall be supplemented by a declaration of the weight, measure or size of the individual units of the commodity, or of the total weight or measure of the commodity, unless a declaration of count alone is fully informative to the consumer, (3) multi-unit packages. Any package containing more than one individually packaged unit of the same commodity shall bear on the outside of the package a declaration of (A) the number of individual units, (B) the quantity of each individual unit and (C) the total quantity of the contents of the multi-unit package . . ."
The court finds that section 42-115j expresses the legislative intent that commodities may be sold by count only, if such count gives accurate information of the quantity of the commodity sold. The court does not believe that the Commissioner abused her discretion when she found that the appellants failed to declare a quantity of both weight and count on 109 packages listed above. She could reasonably find in those cases that labeling them by count only, failed to give accurate information to the consumer of the quantity of the commodities sold.
Fourth: The appellants claim that the labeling and packaging regulations are unconstitutionally vague because there is no standard for allowable variations. As stated above, however, the statute and regulations do not require that the Commissioner allow any variations between the weight declared on the label and the actual weight of the items packaged when the items are packaged and sold at the appellants' store.
The void for vagueness doctrine has two goals: to provide notice to citizens of what is required of them and to prevent arbitrary and discriminatory enforcement. The statute and regulations give notice to grocery stores that Connecticut law prohibits the sale of underweight goods. Grocery owners have a duty to sell goods that correspond to their labeled weight. General Statutes § 42-115k(2). Also § 42-115h gives the Commissioner the discretion to "employ recognized sampling procedures" in the inspection of packaged commodities. The Commissioner uses the testing practices adopted by the National Conference on Weights and Measures, Published in NBSHandbook 133: Checking the net contents of packaged Goods 3rd Edition, September 1988. As a result, merchants are not CT Page 11147 subject to arbitrary enforcement. The court finds that appellants have failed to prove the unconstitutionality of the regulations as applied to them. Furthermore, administrative regulations are presumed valid and unless they are shown inconsistent with the authorizing statute they have full force and effect. Cameron v. Alander, 39 Conn. App. 216, 220.
Fifth: Appellants claim that the regulation denying moisture loss allowances exceeds the statutory authority and violates the equal protection clauses of the State and Federal Constitutions. They claim that variations due to moisture loss are allowed as an unavoidable variation in weight under General Statutes § 42-115k, but that regulation 42-115j-8(a) exceeds the statutory authority because it denies moisture allowances introduced into intrastate commerce by the packager. The court disagrees. Each of the two regulated situations under section 42-115j-8(a)(2) regulates the weights and measure laws in a somewhat different manner than the other. The first situation regulates the activity when the original packager of a commodity introduces the commodity into intrastate commerce outside the point of pack of the packager. In this situation the control over the packaged commodity is passed directly from the packager to someone else. If subsequent to its transfer from the location of the packager the packaged commodity undergoes an unavoidable weight variation caused by exposure to outside conditions, it makes sense that weight variations for exposure should be considered pursuant to section 42-115j-8(a)(2). The packager and such other person who took possession and control of the packaged commodity outside the point of pack may be powerless to make any weight adjustments to the packaged commodity once the packaged commodity leaves the location of the packager.
The packager in the second regulated situation under section 42-115j-8(a), however, is not powerless to make exposure weight adjustments to the packaged commodity introduced into intrastate commerce at the point of packaging. He is at all times in possession and control of the packaged commodity. There is, therefore, good reason not to permit exposure weight variations at the point of packaging since the packager is able to make exposure weight adjustments to a packaged commodity at the point of sale. The appellants fall within a classification under section 42-115j-8(a)(2) made up of all similar packagers who introduce into intrastate commerce packaged commodities at their respective points of CT Page 11148 pack. Such a classification bears a reasonable relationship to a proper legislative purpose, namely, to regulate packaged commodity weight shortages. This classification is not arbitrary or discriminatory in violation of the equal protection provisions of the Federal and State Constitutions.
Sixth: The appellants claim that neither the Department of Consumer Protection nor the Legislature may deem conduct to be a CUTPA violation. They claim that it is a violation of the constitutional separation of powers and the appellants' due process rights to "deem" conduct as violating CUTPA. The Court disagrees.
The Commissioner found several violations of General Statutes §§ 42-115e through 42-225u inclusive. Section 42-115u(b) provides, "A violation of any of the provisions of this chapter shall be deemed an unfair or deceptive practice under section 42-110b. Thus the General Assembly has made a violation of Chapter 736 a per se violation of CUTPA. The Supreme Court has expressly held that when the legislature makes violation of one statute a per se violation of CUTPA, then a finding of a CUTPA violation is automatic upon the finding that the other statute was violated. Woronecki v.Trappe, 228 Conn. 574, 579 (1994). Appellants' reference to application of the Cigarette Rule for determining the existence of an unfair act or practice is misplaced. When the legislature has determined that particular conduct is unfair and makes such conduct unlawful, then that conduct is a per se violation of CUPTA and resort to the Cigarette Rule is inappropriate.
Seventh: Appellants argue that the Commissioner's attempt to deem a CUTPA violation violates the constitutional separation of powers. Connecticut Constitution, ArticleSecond. The court disagrees. The substantive and procedural scheme of CUTPA, as a means of protecting consumers and prohibiting unfair trade practices, constitutes a proper exercise of the legislature's powers to define rights and prescribe remedies. Further, the statutes in this case bear a reasonable relation to the public welfare. Heslin v.Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510,521 (1983) citing State v. Clemente, 166 Conn. 501, 509-510
(1974).
In fact it would violate the separation of powers CT Page 11149 doctrine were the court to substitute its judgment for that of the General Assembly in such a manner. Local 1303 v. FOIC,191 Conn. 173, 179 (1983).
Appellants claim that their procedural due process rights were violated by the Commissioner's finding that the conduct at issue constituted a violation of CUTPA. They have failed to show that they were denied a fair hearing.
Eighth: Appellants claim that the instant action violates The Equal Protection clauses of the Federal and State Constitutions. They claim that the Consumer Department has failed to file complaints against other stores having higher rejection rates than the appellants. The court does not agree that the appellants have proved a violation of the Equal Protection clauses. The fact that the Commissioner settled some short-weight commodity cases before and after issuing a complaint, and before any hearing followed on any issued complaint, merely shows that other retail stores may have cooperated with the Department in correcting the short-weighting problems existing at their respective stores. The appellants, however, after three inspections had not corrected short-weighting problems existing at their stores, forcing the Commissioner to issue a complaint and conduct a hearing to adjudicate the matter.
Ninth: Appellants claim that the final decision and order of the Commissioner is based on ex parte communications prohibited by General Statutes § 4-181(a). The court disagrees. A party claiming that ex parte communications took place during administrative proceedings in violation of § 4-181(a) bears the initial burden of proving that such a violation took place. Henderson v. Department of MotorVehicles, 202 Conn. 453, 457-458 (1987). This the appellants have failed to do. In any event, Section 4-181(b) provides:
"Notwithstanding the provisions of subsection (a) of this section, a member of a multi-member agency may communicate with other members of the agency regarding a matter pending before the agency, and members of the agency or a hearing officer may receive the aid and advice of members, employees, or agents of the agency if those members, employees, or agents have not received communications prohibited by subsection (a) of this section." If there were communications between the commissioner and third persons, the appellants have failed to CT Page 11150 show that such communications were with anyone other than members, employees, or agents of the department.
Tenth: Appellants claim that the regulations themselves are invalid because they were not adopted in accordance with statutory procedural requirements. The regulations were adopted in 1968 over twenty years ago and have not been amended since then, although an amendment was considered in 1975. Appellants claim that the regulations are invalid because when they were submitted for legislative review in 1968, they were not reviewed by the Interim Legislation Regulation Committee as required by General Statutes § 4-48a (1967). The court finds that appellants have failed to prove that the relevant public officials failed to perform their duties in adopting the Regulations. Unless the contrary appears, "[p]ublic officers acting in their official capacity are presumed to have acted legally and properly." Bowman v.1477 Central Avenue Apartments, Inc., 203 Conn. 246, 255,524 A.2d 610 (1987) (citations omitted). Because such public officials in the instant action are presumed to have done their duty unless the contrary appears, §§ 4-45 through 4-50 must be considered to have been complied with in connection with the adoption of the Regulations in 1968. See Shell OilCo. v. Ricciuti, 147 Conn. 277, 285, 160 A.2d 257 (1960).
Furthermore, "`[I]t is well established that an administrative agency's regulations are presumed valid and unless they are shown to be inconsistent with the authorizing statute, they have force and effect of a statute . . . Moreover, a person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant.'" Cameron v. Alander, 39 Conn. App. 216,220 (1995), quoting Travelers Ins. Co. v. Kulla,216 Conn. 390, 399 (1990; Mass. v. United States Fidelity Guaranty Co., 222 Conn. 631, 649 (1992). The appellants have failed to show that the regulations are inconsistent with or beyond the legislative grant.
In any event, the court is mindful of General Statutes § 4-168(h) which provides in pertinent part: ". . . a proceeding to contest any regulation on the ground of non-compliance with the procedural requirements of this section shall be commenced within two years from the effective date of the regulation." In light of this statute the court does not believe it is appropriate to contest compliance with CT Page 11151 procedural requirements of a regulation which is over twenty years old.
The appeal is dismissed.
Frances Allen State Trial Referee