[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case instituted by the plaintiff, Mercy O'Bourke, an Hispanic interpreter, employed by the defendant alleged in a two count complaint employment discrimination in violation of Connecticut Fair Employment Practices Act § 46a-58 (a) and 46a-60 of the Connecticut General Statutes and § 504 of the Rehabilitation Act of 1973 as amended, section 794 of Title 29 of the United States Code to redress employers for discrimination on grounds of disability (Paragraph 3 Count two).
The plaintiff seeks compensatory damages; punitive damages; attorneys' fees and costs; and an injunction to reinstate the plaintiff with back pay and benefits.
The plaintiff must first establish a prima facie case and then the burden shifts to the defendant to establish some justification for the claimed discriminatory treatment. Cameron v. Alander, 39 Conn. App. 216. The plaintiff testified she was hired by the defendant as a Spanish interpreter in 1983. In her role as an interpreter she was required to since 1990 to perform her duties statewide. She was then assigned to New Haven permanently. She was a per diem employee until 1990 when she was assigned to 121 Elm Street, New Haven. When she started her employment, there were three court houses in New Haven. In Exhibit 2 (1993) the plaintiffs duties were outlined to provide oral and written translation for the court in criminal matters and such other matters as may be assigned by Chief Interpreter. Employees in her role would be required to travel in the course of their daily work.
The plaintiff stated within six months at the New Haven Courthouse (G.A.6), 121 Elm Street she started to get colds and other allergic reactions. In 1994 she was referred to Dr. Kafolis. At the request of the plaintiff, Dr. Kafolis provided her with letters dated June 2, 1998 "to whom it may concern" (Exhibit 1). Dr. Kafolis testified that the plaintiff was becoming ill working in certain places. Kafolis wrote the plaintiff was suffering from sever allergic reactions to her work CT Page 12376 environment. The plaintiff was under treatment for hypertension associated with stress while at work. Dr. Kafolis wrote that the New Haven Courthouse has been documented to have poor air quality and that the plaintiff must be transferred to a work place with better air quality. In December 1998, the plaintiff was transferred out of 121 Elm Street to the Judicial Courthouse at 235 Church Street, New Haven, Part A, until February 2000; then assigned to the Juvenile Court at Whalley Avenue, full-time until May 2000. Sometime in June 2000, the plaintiff was sent back to 121 Elm Street where again, she renewed her objections to be employed.
The protest to work at the address courthouse resulted in a letter addressed to her (Exhibit 8) in which the defendant did not agree with the assessment of the building conditions but recognized her physician's statement that the plaintiff might be "sensitive to some aspect of the building environment." The plaintiff was informed that based on Dr. Kafolis' assessment she could voluntarily request a transfer to another location and that most likely she would be transferred. Macchio, the author of the letter, had informed the plaintiff she could ask for a transfer to New Britain which she also opposed claiming she was in no condition to drive that far. When she protested to a transfer to New Britain because of being away from her family, she received the letter Exhibit 8. The plaintiff felt as though Macchio the author of the letter Exhibit 8 was minimizing her illness. Macchio conceded to the plaintiffs objections and sent her to Milford/Derby courthouses which she accepted.
The plaintiff was terminated from employment and applied for retirement which was approved.
Plaintiff argues that she was 58 years old at the time of retirement and planned to work until age 65. The plaintiff receives $560 per month retirement. The plaintiff asserts that her retirement if she had worked to age 65 years would approximate $2000 per month in pension had she not taken early retirement.
Plaintiff argues that this action was brought pursuant to the Connecticut Fair Employment Practices Act which prohibits state agencies from discriminating against employees on grounds of disability. Plaintiff asserts that she had a disability and as a state employee it was recognized as a disability. It is further claimed by the plaintiff that the disciplinary actions she received that steadily increased was for failure to comply with the precise terms to provide her employer with stringent medical documentation. The plaintiff further asserts that faced with termination she mitigated her damages by taking early retirement. CT Page 12377
The defendant alleged by way of special defense that this plaintiff was not a qualified individual with a disability; the alleged disability was not the reason for her termination and the defendant had a legitimate non-discriminatory reason for the plaintiffs termination.
The parties both recognize that there is a paucity of reported cases of discrimination of employees in Connecticut, accordingly courts look to Federal cases for guidance in enforcing Connecticut's anti-discrimination statutes. In this case the plaintiff seeks redress in asserting she was treated differently than other employees (disparate treatment) and that the defendants failed to reasonably accommodate her disabilities.
To establish disparate treatment Connecticut has adopted the burden of proof standard in the case McDonnell Douglas Corp. v. Green, 411 U.S. 792,802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
"Under the McDonnell Douglas-Burdine model the burden of persuasion remains with the plaintiff; once the plaintiff establishes a prima facie case, however, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating (not proving) some legitimate, non-discriminatory reason for plaintiff's rejection. Because the plaintiffs initial prima facie case does not require proof of discriminatory intent, the McDonnell Douglas-Burdine model does not shift the burden of persuasion to the defendant . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. Once the defendant offers a legitimate nondiscriminatory reason, the plaintiff then has an opportunity to prove that the proffered reason is pretexural." (citation and internal quotation omitted). Levy v. Commission of Human Rights andOpportunities, 236 Conn. 96, 108.
The plaintiff in this case received a release of Human Rights Commission authorizing her to bring this lawsuit.
The defendant argues that "in order to establish a prima facie case of discrimination in a termination or discharge case, a plaintiff must show: (1) that she belongs to a protected class; (2) that she was performing her duties satisfactorily; (3) that she was terminated or discharged; and (4) that her termination or discharge occurred under circumstances giving rise to an inference of discrimination on the basis of her membership in that class." (citations and quotations omitted).
The evidence in this case showed first that the plaintiff had an allergic reaction to the environment at her assignment at 121 Elm Street (G.A.6). The defendant, accordingly, tried to accommodate her by moving CT Page 12378 her to 235 Church Street (J.D. New Haven). The plaintiff then called as her witness Cruz Rosa, who is retired, but served as Assistant Chief Court Interpreter from 1981 until he retired January 1, 2002, who testified the plaintiff was a good worker who they tried to keep her out of 121 Elm Street and limit her commuting to more distant assignments than the New Haven area. Rosa testified however, that the plaintiff was not treated in any way adverse and different from other similarly situated employees with the judicial branch. Rosa who was her supervisor testified that in 1997 he was aware that the plaintiff was reprimanded for her attendance in court and missing time from work. Also, in 1998, she was disciplined for her attendance and for being late. He had problems with her of not being in court and received warnings to that effect. The plaintiff was reprimanded and suspended for five days during his supervision.
Rosa testified that the defendant accommodated the plaintiff for driving outside New Haven county.
Rosa testified he received complaints from Judge Fasano and Judge Simon. After he received a complaint from Judge Simon, he took plaintiff out of the courtroom A which was Judge Simon's courtroom.
Rosa attended a pre disciplinary hearing with the plaintiff. He had problems with the plaintiff about submitting needed medical documentation for absences in a timely fashion. Rosa received complaints also from the States Attorney.
During the plaintiffs assignment to the Juvenile Court on Whalley Avenue, Rosa received complaints in writing which he sent onto the main office at Hartford.
Ronald Macchio, (Macchio) as manager of Administrative Services for the Superior Court, became familiar with the plaintiff in 1997. Macchio's duties include becoming involved with judicial employees with regards to discipline. In 1997, he became involved with the plaintiff about unauthorized absences, medical documentation and failure to submit statistical reports at a pre-disciplinary hearing. He made recommendations to his supervisor, Mr. Cassello in his report Exhibit H dated March 21, 1997. In the report unauthorized absences were described; failure on no less than five occasions from December 31, 1996 through January 31, 1997 to provide proper medical documentation for her absences; and failure to produce required weekly statistical reports. The recommendation in the report (Exh. H) was suspension from work without pay for no less than three business days; and a written reprimand. CT Page 12379
The plaintiff admitted that during her employment with the defendant she was disciplined 28 times.
On August 11, 2000 Macchio wrote to Frank Cassello, Director Human Resource Management of the Judicial Department the subject being "Instance of Threatening" (Exhibit O).[1]
The court concludes from all the evidence in this case, notwithstanding, the claim by the defendant that the plaintiff failed to make out a prima facie case that her job performance was satisfactory. Examining the disciplinary record of the plaintiff her termination was not discriminatory because of the requirements placed upon her to provide the defendant with proper documentation. Cassello testified that the plaintiff was suspended on several occasions. Cassello testified she was suspended for five days without pay and suspended for ten days without pay.
There was no credible testimony that the plaintiff was treated differently than other employees. The plaintiff failed to prove that she was discriminated against because of disability.
The medical certificate requirement in the case of the plaintiff because of her history and performance in her employment mandated that she document in the form used by all employees to explain her absences and attach medical confirmation. Cassello testified that the plaintiff was placed upon the medical certificate requirement because of her history and absences.
On August 29, 2000, the defendant notified the plaintiff she was terminated.
Frank Cassello as Director of Administration sent a letter of termination outlining the reasons for the termination (Exhibit D)[2].
The defendant in this case has met the standard laid down in McDonnellDouglas supra 411 U.S. 802 and shows the existence of non-discriminatory reasons for the decision to terminate the plaintiff.
Accordingly, judgment is entered in favor of the defendant on all counts of the complaint.
 Franks S. Meadow Judge Trial Referee