GARY FLEISCHMAN *v.* CONNECTICUT BOARD OF
EXAMINERS IN PODIATRY
(7407)
(7752)

SPALLONE, DALY and NORCOTT, Js.

Argued January 3—decision released July 3, 1990

*John R. Williams,* with whom, on the brief, were
*Alan M. Kosloff* and *Suzanne R. Batchelor,* for the
appellant (plaintiff).

*Thomas J. Ring,* assistant attorney general, with
whom, on the brief, were *Clarine Nardi Riddle,* attor-

ney general, *Richard J. Lynch, Robert W. Walsh* and *Sharon A. Scully,* assistant attorneys general, for the appellees (defendants).

DALY, J. In this opinion we dispose of two related appeals by the plaintiff, Gary Fleischman. Fleischman was sanctioned on three separate occasions by the Connecticut board of examiners in podiatry (board) and unsuccessfully appealed those decisions to the Superior Court. Fleischman appealed all three cases to this court, and we have already denied one such appeal. *Fleischman* v. *Board of Examiners in Podiatry,* 22 Conn. App. 181, 576 A.2d 1302 (1990) (*Fleischman I*).

In *Fleischman I,* we rejected the plaintiff's arguments that the board (1) lacked jurisdiction because it was improperly constituted and (2) deprived the plaintiff of due process by applying standards of care that had not been promulgated in agency regulations or established on the record through expert testimony. The plaintiff raises the same arguments in the remaining two cases, but they will not be considered again.

There are only two new issues that the plaintiff raises in the remaining appeals. The first issue arose in appeal no. 7752 and concerns whether the board abused its discretion in discounting the testimony of the plaintiff's expert witness. The second issue has been raised and briefed in both appeal no. 7752 and appeal no. 7407 and concerns whether General Statutes § 20-59 constitutes an unlawful delegation of authority.[1]

---

[1] "[General Statutes] Sec. 20-59. DISCIPLINARY ACTION BY BOARD; GROUNDS. The board may take any of the actions set forth in section 19a-17 for any of the following reasons: (1) Procurement of a license by fraud or material deception; (2) conviction in a court of competent jurisdiction, either within or without this state, of any crime in the practice of podiatry; (3) fraudulent or deceptive conduct in the course of professional services or activities; (4) illegal or incompetent or negligent conduct in the practice of podiatry; (5) habitual intemperance in the use of spirituous stimulants or addiction to the use of morphine, cocaine or other drugs having a simi-

Proceedings in the first case, appeal no. 7407, began on October 24, 1985, when the Connecticut department of health services (DHS) presented the board with a statement of charges against Fleischman, alleging that he had violated General Statutes § 20-59 in that he (1) negligently or incompetently performed foot surgery, (2) failed to provide adequate postoperative care and (3) failed to keep adequate medical records. On December 11, 1985, the board held a hearing on the charges. The board found that the plaintiff had committed the alleged violations in a decision it issued on June 25, 1986.[2] The board ordered a six month suspension of the plaintiff's license to practice podiatry in Connecticut.

lar effect; (6) aiding and abetting the practice of podiatry by an unlicensed person or a person whose license has been suspended or revoked; (7) mental illness or deficiency of the practitioner; (8) physical illness or loss of motor skill, including but not limited to, deterioration through the aging process, of the practitioner; (9) undertaking or engaging in any medical practice beyond the privileges and rights accorded to the practitioner of podiatry by the provisions of this chapter; or (10) violation of any provision of this chapter or any regulation adopted hereunder. The commissioner of health services may order a license holder to submit to a reasonable physical or mental examination if his physical or mental capacity to practice safely is the subject of an investigation. Said commissioner may petition the superior court for the judicial district of Hartford-New Britain to enforce such order or any action pursuant to section 19a-17. The clerk of any court in this state in which a person practicing podiatry has been convicted of any crime shall, upon such conviction, make written report, in duplicate, to the department of health services of the name and residence of such person, the crime of which such person was convicted and the date of conviction; and said department shall forward one of such duplicate reports to the board."

[2] The board found that "[i]n September, 1984, the Respondent performed a bunionectomy on a patient named Teresa Heifetz using a technique known as minimal incision surgery . . . . While the surgery took place, an individual who was not wearing sterile garb was present in the room where the procedure was performed . . . . [T]he Respondent inserted into the patient's foot a needle which [he] had previously placed on an unsterile counter . . . . [T]he Respondent drilled into the first metatarsal phalangeal joint on the patient's right foot . . . . [T]here was a shattering of the first metatarsal head on the patient's right foot.

"As a part of his post-operative instructions to Ms. Heifetz, the Respondent directed the patient to apply gentian violet to the open wound site

Proceedings in the second case, appeal no. 7752, commenced on August 1, 1986, when the board submitted another statement of charges against the plaintiff. After a hearing, he was found to have committed the violations alleged and the board ordered that he pay a $5000 fine and that his license to practice podiatry be suspended for eighteen months.

## I

The plaintiff claims in the second case that the board abused its discretion by relying on the testimony of Samuel Berkowitz, while rejecting the testimony of Marvin Z. Arnold. Arnold is a diplomate of the American board of ambulatory foot surgery. The plaintiff argues that the board discounted Arnold's testimony because its hidden agenda in the case was to suppress the practice of minimal incision surgery.[3]

---

on a daily basis for the purpose of preventing infection . . . . [He] directed the patient to soak her foot in a mixture of lukewarm water and white vinegar for the purposes of promoting healing and preventing infection. Shortly after . . . surgery, Ms. Heifetz began to notice a greenish discharge from her open wound site. The Respondent, who was aware of this discharge, did not perform any test to determine whether the discharge was a bacterial infection. The Respondent last saw Ms. Heifetz in his office on or about October 17, 1985. On October 25, 1985, Ms. Heifetz was admitted to Milford Hospital with possible osteomyelitis and a definite post-operative wound infection . . . . The medical records concerning Ms. Heifetz maintained by the Respondent consisted largely of pre-printed forms and did not include a thorough medical history of the patient."

[3] The plaintiff makes the following claims. "This is an appeal that arises from an inquisition. The field of podiatric surgery is dominated by traditional open surgery practitioners. None of the three 'professionals' on the board regularly practice minimal incision surgery Dr. Fleischman is [sic] one radically different method of foot surgery known as minimal incision surgery. The board in this case, and in a series of nearly identical cases, has set out to penalize Dr. Fleischman for his surgical methods. Methods, which if allowed to flourish in Connecticut, could supplant traditional open podiatric surgery and thus could pose an economic threat to Connecticut practitioners of traditional open podiatric surgery. Consistently, it has completely ignored the expert testimony of several of the nation's leading minimal incision podiatric surgeons, Dr. Plon and Dr. Marvin Arnold, and

The person under charges has the right to offer expert opinions at the hearing before the board and the board is bound to admit such evidence and to consider it. *Jaffe* v. *State Department of Health,* 135 Conn. 339, 350, 64 A.2d 330 (1949). The board, however, may utilize its own specialized knowledge in evaluating the evidence. General Statutes § 4-178 (8). From a practical standpoint, the expert opinions of physicians will rarely, if ever, bring the board to a decision at variance with its own conclusions because the board is itself expert. *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 531, 560 A.2d 403 (1989); *Jaffe* v. *State Department of Health,* supra, 349.

The board's decision will stand unless it is illegal, arbitrary or an abuse of discretion. *Jaffe* v. *State Department of Health,* supra, 353. In this case, the board did not abuse its discretion in discounting the testimony of Arnold. " ' "[T]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." ' " *Feinson* v. *Conservation Commission,* 180 Conn. 421, 425, 429 A.2d 910 (1980). "An administrative agency is not required to believe any witness, even an expert." *Manor Development Corporation* v. *Conservation Commission,* 180 Conn. 692, 697, 433 A.2d 999 (1980). Although an agency board or commission consisting of lay persons may not completely disregard the only expert evidence available on an issue; *Tanner* v. *Conservation Commission,* 15 Conn. App. 336, 341, 544 A.2d 258 (1988); the same is not true where the board or commission is comprised of experts. With the facts of the conduct before it, the board was competent to

completely ignored the published standards of the national podiatric professional associations, choosing instead to legitimize its decision by reference to the 'expert' testimony of surgeons who have only the most rudimentary experience with minimal incision surgery or even who are avowedly opposed to it  . . . . This is blatant abuse of discretion."

determine whether that conduct was compatible with professional standards. See *Jaffe* v. *State Department of Health*, supra, 523.

## II

The plaintiff claims that General Statutes § 20-59 constitutes an unlawful delegation of legislative power to a nonelective body. "The law-making power is in the legislative branch of our government and cannot constitutionally be delegated . . . but the General Assembly may carry out its legislative policies within the police power of the state by delegating to an administrative agency the power to 'fill in the details.' . . . 'In order to render admissible such delegation of legislative power, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform.' " (Citations omitted.) *New Milford* v. *SCA Services of Connecticut, Inc.*, 174 Conn. 146, 149, 384 A.2d 337 (1977).

We have held that standards similar to those set out in General Statutes § 20-59 are not constitutionally defective. *Altholtz* v. *Dental Commission*, 4 Conn. App. 307, 493 A.2d 298 (1985). There, we stated that "what constitutes 'unprofessional conduct' and what renders a professional 'unfit' or 'incompetent' are to be determined 'by those standards which are commonly accepted by those practicing the same profession in the same territory.' . . . These standards are part of the ethics of the profession, and every member of the profession should be regarded as an expert with regard to the determination of their meaning." (Citations omitted.) Id., 314–15. Because every practicing member is an expert as to the meaning of the standards, the standards prescribe the limits of the board's power with "reasonable clarity." See *State* v. *Stoddard*, 126 Conn. 623, 628, 13 A.2d 586 (1940).

The plaintiff had the burden of establishing the unconstitutionality of General Statutes § 20-59 beyond a reasonable doubt. *Grover* v. *Manchester*, 168 Conn. 84, 88, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975). He has failed in this regard.

The judgments are affirmed.

In this opinion the other judges concurred.