[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO VACATE ARBITRATION AWARD MOTION TO CONFIRM ARBITRATION AWARD
By application filed July 23, 1991, Loren Nauss ("claimant") sought an order compelling New Hampshire Insurance Co. ("insurer") to arbitrate pursuant to the written policy issued by the insurer to the claimant's parents as named insureds. On August 5, 1991, the court, O'Neill, J., granted the claimant's application for an order to compel arbitration by agreement of the parties. An arbitration hearing was held before a panel of three arbitrators on March 5, 6 and 9, 1992, and April 4, 1992. A majority of the three arbitrators made and signed a written award dated April 10, 1992, in favor of the claimant. A dissent was filed by one arbitrator. On or about April 10, 1992, the parties were notified of the award.
On April 30, 1992, the insurer filed an application to vacate the arbitration award pursuant to General Statutes52-418. On May 12, 1992, the claimant filed a motion to confirm the award, seeking confirmation of the award, interest from the date of the award, attorney's fees and costs. The parties have submitted a complete transcript of the arbitration hearing and the exhibits presented by the CT Page 10689 parties at that hearing for the court's review.
The parties did not stipulate to any facts either before or during the arbitration hearing. However, the following facts are undisputed.
On June 17, 1989, at approximately 7:25 p.m., while operating his motorcycle on Deepwood Drive in Lebanon, Connecticut, the claimant was involved in a motor vehicle accident with a Ford F-250 pickup truck owned and operated by Karolyn Karlson-Brown. As a result of the accident, the claimant suffered serious injuries, including the loss of his left arm at the shoulder and his right leg from above the knee.
At the time of the accident, the claimant had motorcycle insurance under a policy issued by Peerless Insurance Co. which afforded a bodily injury liability coverage limit of $20,000. The Ford pickup truck and its operator were insured pursuant to a policy issued by Allstate Insurance Co., which afforded bodily injury liability coverage limits of $50,000 per person and $100,000 per accident. Allstate paid the $50,000 policy limit to the claimant and the parties executed a release on June 4, 1990. In its brief, the insurer indicated that "[T]he acknowledgment of exhaustion of the Allstate policy was not a concession of liability on behalf of the pick-up driver."
At the time of the accident, there was in effect an insurance policy issued to the claimant's parents by the insurer, New Hampshire Insurance Co. This policy insured three vehicles and afforded underinsured motorist coverage of $100,000 per vehicle, or an aggregate of $300,000. The claimant was a resident of his parents' household and was a named insured driver on the policy. The parties agreed that the total amount available to the claimant under the policy was $250,000, representing the aggregate of the underinsured motorist policy limits minus the $50,000 amount received from Allstate. The insurer does not dispute that the claimant's medical expenses exceed the $250,000 amount available pursuant to the policy.
At the arbitration hearing, the insurer presented the testimony of the police officers who had conducted the investigation of the accident and had concluded that the CT Page 10690 accident had occurred in the truck operator's travel lane. The claimant presented the testimony of experts and other witnesses refuting the measurements taken by the police and concluding that the accident had in fact occurred in the claimant's travel lane. While there were no eyewitnesses to the accident, three witnesses who had observed the vehicles just prior to the collision testified at the hearing. The driver of the truck did not testify, and her statement to the police at the scene was not introduced at the hearing by either party.
The majority of the arbitrators found that the police investigation of the accident was not reliable and not credible, that the testimony of two witnesses in the best position to view the accident scene just before the collision showed that the claimant was driving in the middle of his portion of the road, was not driving erratically and was not speeding just prior to the collision. The majority further found that another witness saw only a small portion of the roadway traveled by the truck operator and that her testimony at the hearing was inconsistent with her statements to the police at the scene. The majority found that the truck operator's failure to keep a proper lookout was a substantial factor causing the collision, and that the more credible evidence showed that the collision occurred in the claimant's travel lane. The majority further found that there was also some evidence which would show that the claimant could have pulled further to the right of his travel lane, and therefore found that the claimant was 50% responsible for the collision. The majority of the arbitrators concluded that, because they found that the claimant was not more responsible for the accident than the truck operator, the claimant would be entitled to recover from the truck operator if she had adequate insurance. The majority awarded the claimant the stipulated coverage of $250,000.
The dissenting arbitrator found that the only credible investigation of the accident was that done on the day of the accident by the investigating officers, and that the investigatory efforts of the claimant were so remote in time from the date of the accident that their probative value was worthless. The dissenting arbitrator further found that while the claimant's investigatory efforts may have showed that the investigating officers made errors in recording the fruits of their investigation, this had no effect on the CT Page 10691 conclusions of the investigating officers that the impact was in the lane of the pickup truck. The dissenting arbitrator found that if all of the investigatory results reached by both the police officers and the claimant's experts were to be discounted, a comparative negligence analysis would show that the claimant's negligence outweighed that of the truck operator, since the claimant was operating a smaller vehicle and could have easily moved to the right to avoid the accident. The dissenting arbitrator, thus, found that the claimant had the last clear chance to avoid the accident. The dissenting arbitrator further stated that "in all probability, the claimant moved to the left to avoid a large sand wash on the right of the road which took up half of his lane," and swerved into the path of the truck operator as she was rounding the corner with her vision blocked by trees and brush. The dissenting arbitrator concluded that since even the claimant's experts placed the point of impact near the center of the road, the truck operator could not move any more to the right than she already had, and the claimant either had ample space to avoid the impact, or, when confronted with an obstacle in his path, could have stopped until the other lane was clear. Thus, the dissenting arbitrator stated, "it is clear that the claimant was more at fault than the truck operator."
The Connecticut Supreme Court has recently construed General Statutes 38-175c (now 38a-336) and 52-418 to incorporate a "substantial evidence" standard of judicial review of factual findings by the arbitrators. Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 660-61,591 A.2d 101 (1991).
 The substantial evidence test for judicial review of factual findings provides as follows: "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the administrative agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." Connecticut Light Power Co. v. DPUC, 216 Conn. 627, 639, 583 A.2d 906 (1990). "Substantial evidence" will be found to CT Page 10692 exist if the administrative record supplies a substantial basis of fact from which the court reasonably can infer the fact in issue. Id., 639-40.
 This standard of review provides less room for judicial scrutiny than do the "clearly erroneous" or "weight of the evidence" rules. Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580, 593, [590] A.2d [447] (1991). "In determining whether an administrative finding is supported by `substantial evidence,' a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part . . . ." Briggs v. State Employees Retirement Commission, 210 Conn. 214, 217, 554 A.2d 292 (1989); see also Connecticut Light 
Power Co. v. DPUC, supra, 640.
Id., 660-61 n. 15. Because the issue before the arbitrators in this case was coverage under an automobile liability insurance policy containing an uninsured motorist clause providing for arbitration, the proceeding before the arbitrators was "compulsory arbitration" pursuant to General Statutes 38-175c (now38a-336). Here, despite the insurer's apparent attempt to characterize the issues before the court as legal determinations subject to de novo review, the majority of the insurer's claims relate to the factual findings of the arbitrators. Therefore, this court must review the record of the proceedings before the arbitrators to determine if the arbitrators' majority decision is supported by substantial evidence.
A thorough review of the entire record of the arbitration proceedings reveals substantial evidence supporting the decision of the majority of the arbitration panel.
To briefly summarize the "substantial evidence" appearing in the record, at the arbitration hearing, the claimant presented the testimony of Dr. Steven CT Page 10693 Batterman, an accident reconstruction expert, who testified at length as to the reliability of the measurements and conclusions of the police investigators regarding the width of the road, marks supposedly left by the vehicles on the road, and the point or area of impact. Dr. Batterman testified that a nine inch long and four and one-half inch wide mark appearing on the road and identified by the police as a "scuff mark" from the motorcycle tire, was too wide to have been made by a motorcycle tire and was, in fact, from the left front tire of the truck. Dr. Batterman further testified that, in his opinion, the police incorrectly located the point of impact as in the truck's lane when it was really in the claimant's lane. Dr. Batterman further stated that, in their report, the police never described the character of the scuff mark or drew the tread pattern, and, thus, the police "didn't eliminate it as being a mark from the truck tire."
Although there were no eyewitnesses to the accident, the claimant presented two witnesses who had seen him on his motorcycle just prior to impact. Michelle Kersey testified that the claimant was not driving fast or erratically, and was "[o]n his own side" of the road. Michelle Kersey stated that after the accident the driver of the truck "said she didn't see him. She just kept saying `I didn't see him. I didn't see him.'"
A witness presented by the insurer, Michael Cei, testified that his measurements reflected that the road was nineteen feet wide in the area of the accident, not sixteen feet wide as the police measured, and that the method used by the police for measuring was not what he would utilize. Cei further testified that it was possible that the scuff mark was from the front tire of the motorcycle, but that it was also possible that it was a tire mark and/or rim mark from the front left tire of the pickup truck.
The insurer appears to argue that the majority of the arbitrators could not possibly disbelieve the police officers' conclusions, and, thus, their decision, based upon the testimony of the claimant's experts and other witnesses rather than the evidence offered by the CT Page 10694 insurer, was not based upon substantial evidence. However, the credibility of witnesses is a matter within the province of the arbitrators, and the arbitrators are not required to believe any witness, even an expert. See Fleischman v. Board of Examiners in Podiatry,22 Conn. App. 193, 197, 576 A.2d 1308 (1990); Briggs v. State Employees Retirement Commission, supra. The majority of the arbitrators were not required to adopt the findings of the police officers, but were instead at liberty to find the conclusions of the claimant's experts and other witnesses more reliable and credible. Accordingly, the insurer's application to vacate the arbitration award on the grounds set forth in its memorandum which relate to the majority of the arbitrators' factual findings must be denied because the record contains substantial evidence supporting the majority's decision.
In addition to its claims regarding the factual findings of the arbitrators, the insurer also argues that because the supreme court has held, in Mendes v. Automobile Insurance Co. of Hartford, 212 Conn. 652,563 A.2d 695 (1989), that an "escape clause" similar to that contained in the policy at issue violated public policy, and this escape clause is not severable from the balance of the arbitration section of the policy, the entire arbitration section should be stricken, "thus rendering the arbitration a nullity." However, the insurer provides no analysis or explanation for this contention, nor does it cite any legal authority for its conclusion that this "escape clause" is not severable from the remainder of the arbitration section of its policy. The insurer apparently never raised this issue in 1991, nearly two years after the release of Mendes, at the time that the claimant filed its application to the court for an order compelling the insurer to arbitrate pursuant to the policy. The insurer instead agreed to the granting of the order and proceeded to arbitrate the claim. The supreme court has often stated that it "will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." Krattenstein v. G. Fox Co., 155 Conn. 609, 616, 236 A.2d 466
(1967); see also Henderson v. Department of Motor CT Page 10695 Vehicles, 202 Conn. 453, 462-63, 521 A.2d 1040 (1987); Bowman v. 1477 Central Avenue Apartments, Inc.,203 Conn. 246, 251-52, 524 A.2d 610 (1987). This statement by the Supreme Court is especially appropriate in the context of this case, where the insurer has acquiesced and participated in the entire arbitration proceeding, and then seeks to raise the issue of the unenforceability of the arbitration section drafted by it in its policy only after the arbitrators have rendered their award for the claimant. In the absence of any analysis or cited authority provided by the insurer, the court concludes, as the court did in Mendes, that while the "escape clause" contained in the insurer's policy is unenforceable as against public policy, the remainder of the arbitration section of the policy is valid and enforceable. Accordingly, the insurer's application to vacate the arbitration award on the ground that a provision in its insurance policy has been found to be void as against public policy is denied.
The remainder of the arguments raised by the insurer in its memorandum are either devoid of any citation to legal authority or state legal conclusions without any explanation or analysis supporting those conclusions. Further, since the court has concluded that the majority arbitrators' factual findings were supported by substantial evidence, the court further concludes that the insurer's conclusory claims regarding any perceived biases of witnesses or inappropriate "pleas for sympathy" are unpersuasive.
In his motion to confirm the arbitration award, the claimant requests interest from the date of the award, attorney's fees and costs.
The trial court has discretion, under General Statutes 37-3a, to award prejudgment interest on an arbitration award retroactively to the date of the arbitration award. Chmielewski v. Aetna Casualty 
Surety Co., supra, 676, citing Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 701, 590 A.2d 957
(1991). "Section 37-3a provides . . . that interest `may be recovered and allowed in . . . arbitration proceedings under chapter 909 . . . as damages for the detention of money CT Page 10696 after it becomes payable. . . .'" Middlesex Mutual Assurance Co. v. Walsh, supra.
 In accordance with the permissive language of 37-3a; see White Oak Corporation v. Department of Transportation, 217 Conn. 281, 302, 585 A.2d 1199 (1991); . . . [the supreme court has] stated that "`[t]he allowance of interest as an element of damages is primarily an equitable determination and a matter within the discretion of the trial court.'" Metcalfe v. Talarski, 213 Conn. 145, 160, 567 A.2d 1148 (1989); Nor'easter Group, Inc. v. Colossale Concrete, Inc., 207 Conn. 468, 482, 542 A.2d 692 (1988). While the determination depends in part upon when the money involved is "payable"; see General Statutes 37-3a; see also White Oak Corporation v. Department of Transportation, supra; "[t]he real question in each case is whether the detention of the money is or is not wrongful under the circumstances." Cecio Bros., Inc. v. Feldmann, 161 Conn. 265, 275, 287 A.2d 374 (1971); see Associated Catalog Merchandisers, Inc. v. Chagnon, 210 Conn. 734, 748, 557 A.2d 525 (1989); Newington v. General Sanitation Service Co., 196 Conn. 81, 90, 491 A.2d 363
(1985). The determination "`is one to be made in view of the demands of justice rather than through the application of any arbitrary rule.'" Cecio Bros., Inc. v. Feldmann, supra; Bernhard v. Rochester German Ins. Co., 79 Conn. 388, 398, 65 A. 134 (1906).
Id., 701-2.
The claimant argues that an award of prejudgment interest in this case is especially appropriate because there was no truly meritorious basis for the insurer to delay payment of the award. The claimant asserts that CT Page 10697 the insurer has had the use of the money to which the claimant is entitled since the date of the award, and that failure to award interest to the claimant would financially reward the insurer for a dilatory proceeding. Under the circumstance of this case, the court determines that it is appropriate to exercise its discretion to award prejudgment interest to the claimant. Interest, therefore, is awarded from the date of the award. The claimant's requests for attorney's fees and costs were not briefed and, accordingly, are not addressed.
For the foregoing reasons, the insurer's application to vacate the arbitration award is denied and the claimant's motion to confirm the arbitration award is granted.
Schaller, J.