[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, the Connecticut Commission on Human Rights and Opportunities ("CHRO") and Michelle Budnik, appeal the final decision of the CHRO's presiding officer, naming as defendants, the State of Connecticut, University of Connecticut ("UConn") and the Commission on Human Rights and Opportunities, acting through Presiding Officer John F. Daly. The presiding officer found, as a result of a CHRO hearing, that the defendant, UConn, did not commit gender-based discrimination. The plaintiffs bring this appeal pursuant to General Statutes §§ 46a-94a and 4-183.
PROCEDURAL/FACTUAL HISTORY
By complaint dated March 3, 1995, the plaintiffs allege the following. On July 19, 1991, the plaintiff, Budnik, filed a complaint with the CHRO charging the defendant, UConn, with discrimination in violation of General Statutes §§ 46a-58 (a) and 46a-64 (a)(1), (a)(2). Through amendments dated August 4 and CT Page 6625 August 13, 1992, the plaintiff, Budnik, amended her complaint with the CHRO to include General Statutes §§ 46a-71 (a) and (b), 46a-75 (a) and (b) and 20 U.S.C. § 1681 (a).
The plaintiff, Budnik's, complaint alleged that the defendant, UConn, discriminated against her on the base of the plaintiff, Budnik's gender by removing her from the varsity cheerleading squad because she weighed more than 125 pounds. The plaintiff, Budnik, asserts that there was no maximum weight limit for male cheerleaders. The CHRO investigated the plaintiff, Budnik's, complaint and found reasonable cause to believe that the defendant, UConn, had committed a discriminatory practice.
The plaintiff, Budnik's complaint was certified for a public hearing pursuant to General Statutes § 46a-84 (a). The hearing occurred on October 28, 29 and 30, 1992, and January 19, 20 and 21, 1993. The presiding officer at the hearing, John F. Daly, functioning as the agency, issued a final decision, dismissing the complaint, on January 19, 1995. That decision was mailed to the parties by the defendant, CHRO, on January 20, 1995.
The plaintiffs take issue with the presiding officer's decision on the following grounds: (1) the presiding officer's decision is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; (2) the decision is in violation of statutory provision; (3) the decision was made upon unlawful procedure; (4) the decision is characterized by a clearly unwarranted exercise of discretion, and; (5) the decision is affected by other error of law.
The defendants filed the return of record on June 1, 1995. The plaintiffs filed their brief in support of their appeal on November 17, 1995. The defendants filed their brief in opposition on January 18, 1996. The parties appeared before the court and argued the merits of the case on October 17, 1996.
I. JURISDICTION
Appeals to court from administrative agencies exist only under statutory authority. Killingly v. Connecticut SitingCouncil, 220 Conn. 516, 521, 600 A.2d 752 (1991). A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions which create it.Citizens Against Pollution Northwest, Inc. v. Connecticut SitingCT Page 6626Council, 217 Conn. 143, 152, 584 A.2d 1183 (1991). Failure to comply strictly with the statutory provisions by which a statutory right to appeal is created will subject an appeal to dismissal. Killingly v. Connecticut Siting Council, supra,220 Conn. 522.
A. Aggrievement
Aggrievement is a jurisdictional matter and a prerequisite for maintaining an appeal. Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953
(1991). The question of aggrievement is essentially one of standing. DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,373, 573 A.2d 1222 (1991). Unless the plaintiff alleges and proves aggrievement, the court must dismiss the appeal. Id. "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specifically and injuriously affected as to property or other legal rights." Smith v. Planning andZoning Board, 203 Conn. 317, 321, 524 A.2d 1128 (1987).
The plaintiff, CHRO, alleges that it is aggrieved by its final decision because "The CHRO has been denied the right to have the relator's complaint determined under the proper legal analysis, upon an objective review of the record, and upon a hearing of all relevant, proffered evidence. The CHRO has therefore been denied a full, fair hearing, on a complaint in which the CHRO reasonably believes a discriminatory practice to have occurred, and for which Ms. Budnik, Plaintiff CHRO'S relator, is reasonably entitled to relief." Complaint, ¶ 17 (a). Additionally, the plaintiff, CHRO, asserts that "The improper legal analysis and wholly unsupported factual findings of the Presiding Officer, if left uncorrected, will thwart the CHRO'S statutory command to enforce the anti-discrimination laws of the State of Connecticut, not only in this case, but also will set adverse precedent for future cases." Complaint, ¶ 17(b).
The plaintiff, CHRO, is an agency of the State of Connecticut charged with the responsibility to receive, investigate, conciliate and hear complaints alleging discriminatory practices. General Statutes § 46a-56. The plaintiff, CHRO's, legal rights regarding its duties as the commission to investigate discrimination claims would be jeopardized by a ruling that is CT Page 6627 contrary to its established duties and which would adversely affect its ability to carry out its charter. Therefore, the plaintiff, CHRO, has sufficiently proven aggrievement.
B. Timeliness
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which the created the right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Capalbo v. Planning Zoning Board of Appeals,208 Conn. 480, 485, 547 A.2d 528 (1988). Thus, where an appeal is filed after the statutory appeal period has expired, the trial court lacks subject matter jurisdiction over the appeal. UpjohnCo. v. Zoning Board of Appeals, 224 Conn. 96, 102, 616 A.2d 793
(1992).
General Statutes § 46a-94a states that the plaintiff, CHRO, "any respondent or any complainant aggrieved by a final order of a presiding officer or any complainant aggrieved by the dismissal of his complaint by the commission may appeal therefrom in accordance with section 4-183 . . . ." General Statutes §46a-94a(a). General Statutes § 4-183 provides that "[w]ithin forty-five days after mailing of the final decision under4-180 . . . a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the attorney general in Hartford . . . ." General Statutes § 4-183 (c).
The final decision was rendered on January 19, 1995. The sheriff's return shows that service occurred on March 3, 1995. Therefore service is timely.
The plaintiffs' first claim of error is that the hearing officer refused to permit the CHRO to call an expert witness. The plaintiffs argue that the testimony of their witness, Dr. Margo Maine, was crucial as rebuttal testimony to demonstrate that as a result of the pressure to lose weight, the plaintiff, Budnik, developed a negative attitude. Additionally, the plaintiffs assert that Dr. Maine's testimony would have been extremely relevant in light of the presiding officer's finding that the plaintiff, Budnik, was removed from the team because of her attitude. CT Page 6628
The defendant UConn argues that the presiding officer's action was within his regulatory authority to exercise control over the hearing, including the authority to admit or exclude testimony or other evidence pursuant to the Regulations of Connecticut State Agencies §§ 46a-54-101 and 46a-54-102 (b) and General Statutes § 46a-54 (5). The defendant also asserts that there is substantial evidence in the record as a whole to support the presiding officer's decision to exclude the proffered testimony. Therefore, the defendant contends that the plaintiffs have failed in their burden to show that the presiding officer's decision to exclude the testimony was arbitrary, illegal or a clear abuse of discretion.
"In contested cases . . . [a]ny oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence . . . ." General Statutes § 4-178. "There is no constitutional or statutory requirement that every witness must testify in a . . . hearing. . . . The erroneous admission [or omission] of evidence will not invalidate an administrative order unless substantial prejudice is affirmatively shown. . . . The burden is on the plaintiff to prove that the evidentiary ruling of an administrative hearing officer is arbitrary, illegal or an abuse of discretion.Connecticut Natural Gas Corporation v. PUCA, 183 Conn. 128, 139,439 A.2d 282 (1981); Balch Pontiac-Buick, Inc. v. Commission ofMotor Vehicles, 165 Conn. 559, 570, 345 A.2d 520 (1973)." Griffinv. Muzio, 10 Conn. App. 90, 94, 521 A.2d 607 (1987).
At the hearing, the plaintiffs argued that it was gender discrimination that was the cause of the plaintiff, Budnik's dismissal from the cheerleading squad because there was no weight requirement for men. The defendant, UConn, however, specially plead the defense that the plaintiff, Budnik, was dismissed for a legitimate, non-discriminatory reason unrelated to her weight. (Return of Record ## 15, and 16). The defendant asserted that it was the plaintiff, Budnik's attitude that caused her dismissal.
The presiding officer found the following. The plaintiff, Budnik, was referred to a nutritionist for counseling on how to maintain her weight below the maximum limit in a healthy manner. (ROR # 1, p. 3). The plaintiff discontinued her prescribed diet within a few weeks and initiated no follow up visits to the nutritionist. Id. The plaintiff was benched after the first home CT Page 6629 football game because she was over the weight limit. (ROR # 1, p. 4). The plaintiff appeared in defiance of the cheerleading dress code in a tight fitting, revealing outfit and was directed to change into more appropriate attire. Id. The presiding officer found that the plaintiff's behavior and attitude became increasingly worse, becoming argumentative and using vulgarity. (ROR # 1, p. 5). She also refused to tumble at a basketball game.Id. The assistant coach spent a disproportionate amount of time counseling the plaintiff about her attitude problems. (ROR # 1, p. 6). She refused to see a nutritionist. Id. When she finally did, she was concerned only with a crash diet. Id. Against the advice of the nutritionist, the plaintiff often was observed drinking alcohol to the point of intoxication. (ROR # 1, p. 7).
At the hearing, the CHRO called Cynthia Dunne, the former assistant coach of the cheerleading squad, in its case in chief. (ROR # 3, p. 266). Ms. Dunne testified that the plaintiff had a negative attitude and was difficult. Id., p. 297-98. Ms. Dunne testified that the plaintiff was "rude, combative, defensive. there was a problem with something, even say if it was somebody else's fault, she would attack verbally." Id., p. 298. Ms. Dunne also testified about the importance of a good attitude in cheerleading. Id., p. 302-03. Ms. Dunne testified that the primary reason the plaintiff was not allowed to cheer was her negative attitude. Id., p. 305.
Following this damaging testimony, unhelpful to its theory that the plaintiff was dismissed because of her weight, the CHRO attempted to call Dr. Maine to rebut the testimony of its witness and other defense witnesses. (ROR # 7, p. 946). The CHRO proffered that Dr. Maine's testimony would rebut the substantial evidence presented regarding the plaintiff, Budnik's negative attitude. Id., p. 948. The CHRO further offered that Dr. Maine would testify that the plaintiff's negative attitude was a result of the weight loss program forced on her so she could meet the team maximum. Id., p. 949.
The defendant, UConn, objected to this testimony, arguing that Dr. Maine's expertise in eating disorders is irrelevant since no evidence of eating disorders was raise prior to Dr. Maine being called as a witness. Id., p. 950. Additionally, the defendant argued that Dr. Maine was called as a witness during the case for the defendant and therefore, could not rebut evidence from the plaintiff's case in chief, specifically the testimony of Ms. Dunne. Id. The defendant, UConn, also argued CT Page 6630 that the CHRO's attempt to link the plaintiff's bad attitude with the weight restriction was a new theory to the case and highly prejudicial. Id., 958-59. The presiding officer sustained the defendant's objection and excluded Dr. Maine's testimony. Id.,
p. 953.
The plaintiffs now argue that the hearing officer's use of discretion is unsupported by the law. Specifically, the plaintiffs rely on Katz v. Passariello, 12 Conn. App. 651,533 A.2d 888 (1987). In Katz. supra, the court held that a requirement that a party name its rebuttal witness prior to the commencement of the trial "would place efficiency before logic. It is simply not possible for a litigant to anticipate all of the opposing evidence that will be elicited at trial. Thus, no party could fully divine which testimony will require rebuttal and which will not." Id., 654-55. However, the holding in Katz does not stand for the proposition that a plaintiff may call a rebuttal witness at any time without the fear of the testimony being excluded. The court held that the proper procedure for determining admissibility of rebuttal testimony was to conduct a hearing on the admissibility of the offered evidence. Id., 654.
In the present case, before issuing his ruling, the hearing officer heard extensive argument from both parties concerning the admissibility of Dr. Maine's testimony. (ROR # 7, pp. 946-959) Therefore, Katz v. Passariello, supra, is not persuasive to demonstrate that the hearing officer's ruling was clearly illegal.
Since there is no requirement that all of a party's witnesses must testify, the plaintiffs burden is to demonstrate how the presiding officer's decision was either an abuse of discretion or arbitrary. See Griffin v. Muzio, 10 Conn. App. 90, 94,521 A.2d 607 (1987). The CHRO was given the opportunity during its case in chief to present evidence to elaborate or explain the plaintiff's attitude. (ROR # 7, p. 950). It was the CHRO's own witness that testified that the plaintiff was dismissed from the cheerleading squad for reasons other than her weight, which supported the defendant, UConn's, position.
The plaintiffs have failed in their burden to show that the officer's decision was arbitrary or an abuse of discretion. There is substantial evidence in the record to show that the plaintiffs had the opportunity to present evidence during their case in chief regarding any link between the plaintiff, Budnik's attitude CT Page 6631 and weight control stress. The credibility of witnesses and the determination of factual issues are matters with the province of the administrative agency. Fleischman v. Board of Examiners inPodiatry, 22 Conn. App. 193, 197, 576 A.2d 1308 (1990). Therefore, the plaintiffs' claim that the presiding officer abused his discretion, acted illegal or arbitrarily when he excluded the testimony of Dr. Maine is unpersuasive.
 II
The plaintiffs also challenge the presiding officer's findings of facts. The plaintiffs take issue with the findings that: (1) a weight standard for male cheerleaders existed; (2) males demonstrated a sustained ability to bench press 130 pounds; (3) male cheerleaders' ability to bench press 130 pounds was relevant, and; (4) plaintiff Budnik had a negative attitude. The defendant asserts that there is substantial evidence in the record to support each of the hearing officer's findings.
The review of an administrative agency's action is very limited. Starr v. Commission of Department of EnvironmentalProtection, 226 Conn. 358, 371, 627 A.2d 1296 (1993). The "substantial evidence" rule governs judicial review of administrative fact-finding. Miko v. CHRO, 220 Conn. 192, 200,596 A.2d 396 (1991). Substantial evidence exists if the administrative record demonstrates a substantial basis of fact from which the fact in question can be reasonably inferred.Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580,593, 590 A.2d 447 (1991). In determining whether an administrative finding is supported by substantial evidence, a court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence as presented by any witness, even an expert, in whole or in part. Id.
The plaintiff's attitude
As described and referenced in the above section, the plaintiff's negative attitude was established by the plaintiff's own witness. The defendant, UConn, also put evidence on concerning the plaintiff's negative attitude. (ROR # 6, p. 878). Therefore, the hearing officer's finding that the plaintiff was dismissed from the cheerleading squad because of a bad attitude is supported by substantial evidence within the record. CT Page 6632
Weight Standard for Male Cheerleaders
The plaintiffs argue that the hearing officer's decision implies that comparable weight standards were imposed on male cheerleaders. However, the officer's decision makes no reference to a comparable weight standard. The hearing officer found that both male and female cheerleaders were weighed on a weekly basis. (ROR # 1, p. 4). Additionally, the hearing officer found that male cheerleaders were to maintain an athletic appearance and if they did not do so, they were also benched until the excess weight was lost or they were dismissed from the squad. Id.
Both of these findings are supported in the record. The plaintiff, Budnik, testified that both male and female cheerleaders were weighed on a weekly basis. (ROR # 3, p. 210-11). The coach of the varsity cheerleading squad, Neal Kearney, testified that male cheerleaders were directed to lose weight, were benched or ultimately dismissed from the squad because of their failure to lose weight. (ROR # 5, p. 745-46). The plaintiffs argue that even if the record supports a finding that both men, and women cheerleaders had fitness standards, they assert that the disparate weight standard for woman was discrimatory.
First, the hearing officer found that it was the plaintiff, Budnik's, attitude, not weight that removed her from the squad. (ROR # 1, p. 23.) In fact, the officer found that the plaintiff was "an immature, willful self-indulgent young woman who refused to obey gender neutral rules and thereby weakened the morale of the team." Id. The evidence before the hearing officer was a sufficient basis for his determination that the plaintiff Budnik was dismissed from the squad because of her poor attitude.
As for the weight restriction, the hearing officer found that the defendant, UConn, had a legitimate, non-discriminatory reason for imposing the weight standard. (ROR # 1, p. 16). The hearing officer found, based on the testimony of Coach Kearney, that in order for the entire squad to perform advanced partner stunts, which included lifting and tossing, it was necessary for general limits on how much the female cheerleaders, the "tossees," could weigh. Coach Kearney, did not arbitrarily pick a number, but reviewed comparable programs at different schools to set the maximum at 125 pounds. (ROR # 5, p. 774-75). The cheerleading coach testified that tossing was involved in 85 to 90 per-cent of the cheers the squad performed. (ROR # 5, pp. 739, 768-69; ROR # 6, p. 790-91). CT Page 6633
There is substantial evidence in the record to support the hearing officer's finding that male cheerleaders were benched or dismissed because of their weight. Furthermore, the evidence demonstrates that there existed a legitimate and non-discriminatory reason for the set weight restriction on the female cheerleaders.
Sustaining the Ability to Bench Press 130 Pounds.
The plaintiffs claim there is no evidence in the record to support the hearing officer's finding that male cheerleaders were required to sustain the ability to bench press 130 pounds. The hearing officer found that male cheerleaders were required, through mandatory weekly weight training, to reach and sustain the ability bench press 130 pounds. (ROR # 1, pp. 4, 16). The record supports this finding.
Coach Kearney testified that there was a strength requirement for males. Specifically, the coach testified that male cheerleaders "had to be able to bench consistently 130 pounds." (ROR # 5, p. 739). Furthermore, Coach Kearney stated that they had "to lift 130 pounds for a significant amount of times." (ROR # 6, p. 790).
The credibility of fact witnesses are exclusively the province of the hearing officer. Laufer v. Conversation Commission ofFairfield, 24 Conn. App. 708, 713, 592 A.2d 392 (1991). The hearing officer's assessment of credibility and his right to believe evidence presented by any witness should not be disturbed on appeal. Connecticut Light Power v. Department of PublicUtility Control, 216 Conn. 627, 639-40, 583 A.2d 906 (1990). The record contains substantial evidence to support the hearing officer's finding that the male cheerleaders had to show a sustained ability to bench press 130 pounds.
The "Bench Press Ability's" Relevancy
The plaintiffs' final issue with the factual findings of the hearing officer concerns the relevancy of the ability of the male cheerleaders to bench press 130 pounds. The plaintiffs argue that this ability is irrelevant. The defendants contend, however, that the hearing officer's finding was relevant to show that the defendant, UConn, did not discriminate on account of gender.
The hearing officer found that "the evidence showed that the CT Page 6634 Respondents did not, either by their policies or by the actions they took concerning the Complainant's status, discriminate on the account of sex at all." (ROR # 1, p. 15-16). It has already been shown that the defendant, UConn's, desire for a competitive team led to a weight requirement for females. To lift those female cheerleaders, the male cheerleaders had to bench 130 pounds, five pounds over the maximum weight for females. The discrepancy was to insure that the "tossers" could lift a "moving girl." (sic) (ROR # 6, p. 900). The female weight standard was established after the coach studied other schools' programs. Furthermore, tossing stunts were the majority of cheers the squad performed. The hearing officer, therefore, concluded that the male/female, strength/weight requirements were legitimate, non-discriminatory standards and a bona fide occupational qualification (BFOQ) for cheerleading. (ROR # 1, p. 17).
There is substantial evidence in the record that BFOQ has a direct correlation to the requirement of the position of cheerleading. For the safety of both male and female cheerleaders, men had to be able to safely toss and catch women in cheerleading stunts. This safety concern satisfies the stringent BFOQ standard set forth in Connecticut Institute for the Blind v. CHRO, 176 Conn. 88,95, 405 A.2d 618 (1978).
The plaintiffs' appeal, therefore, on the ground that the hearing officer's findings of fact were not substantiated by the record, is unpersuasive.
 III
The final claims of error by the plaintiffs are alleged errors of law committed by the hearing officer. The plaintiffs argue that the hearing officer found that the cheerleading squad was not a public accommodation. Additionally, the plaintiffs assert that the hearing officer never considered the plaintiff, Budnik's, claims under General Statutes § 46a-71 (a), (b). The defendant contends that the hearing officer committed no errors of law.
The Public Accommodation Argument
The hearing officer found that the University of Connecticut may very well be a public accommodation, but the position of cheerleader is not. (ROR # 1, p. 13). The plaintiffs argue that the case the hearing officer applied, Quinnipiac Council v. CHRO,
CT Page 6635204 Conn. 287, 528 A.2d 352 (1987), is not controlling and was misinterpreted by the hearing officer. The defendant argues that the hearing officer was faithful to the holding.
"It is a discriminatory practice, . . . to deny any person within the jurisdiction of this state full and equal accommodations in every place of public accommodation, resort or amusement by reason of . . . sex . . . . The phrase place of public accommodation, resort or amusement is itself defined . . . as any establishment, which caters or offers its services or facilities or goods to the general public . . . ." (Citations omitted; internal quotation marks omitted.) Quinnipiac Council v. CHRO, supra,204 Conn. 294. "Our public accommodation statute, . . . gives no indication that it was intended to encompass the proffer of services within the definition of discriminatory accommodation practices." (Citations omitted.) Id., 302.
The defendant argues that the hearing officer properly readQuinnipiac Council, supra, to hold that the public accommodation law applied to services offered, not to be of service. The plaintiffs assert that a cheerleader position within the university is not a service provider position, but one of where a service is provided to the participants. The plaintiffs claim that if the plaintiff, Budnik, had wanted to be a cheerleader coach, thenQuinnipiac Council would control in the manner the hearing officer suggests. This analogy, however, is faulted.
The hearing officer found that cheerleading was the opportunity to be of service. (ROR # 1, p. 12). While this finding may be tenuous, the hearing officer also found the position of cheerleader to be outside the realm of the public accommodation statute because it was not open to the general public. (ROR # 1, p. 13). "In the decision of whether a discriminatory public accommodation practice has occurred, the determinative issue is whether an establishment' that serves the general public' has denied access to its goods and services to a member of a protected class." Quinnipiac Council v. CHRO, 204 Conn. 298.
The hearing officer based his finding on the issue of whether the "specific position of cheerleader at the University of Connecticut is offered to the general public." (ROR # 1, p. 13). The testimony offered at the hearing demonstrated that "[o]nly full-time undergraduate students at the University of Connecticut who are in good academic standing," (ROR # 4, p. 514). Based on the evidence, the hearing officer found that this an CT Page 6636 extracurricular activity limited to a discreet group of people who meet certain specific qualifications. (ROR # 1, p. 13). "The University of Connecticut as a whole may be a public accommodation, but the specific position of cheerleader is not." Id.
The court finds the hearing officer's interpretation of the position of cheerleader persuasive in light of the example offered by the court in Quinnipiac Council, supra. The court stated if "a private university . . . opens it theater facilities for entertainment of the general public [it] cannot refuse admission for reasons of race or sex or other grounds made illegal . . . ."Quinnipiac Council v. CHRO, supra, 204 Conn. 299. Similarly, if the defendant, UConn, had made the position of cheerleader available to the general public, the position would more likely be a public accommodation than it is presently. The substantial evidence in the record supports, not only the hearing officer's decision, but his interpretation and application of the case law. The court does not agree with the plaintiffs' assertion that the hearing officer misapplied Quinnipiac Council v. CHRO, supra, and the Public Accommodations Act.
Failing to Cite General Statutes § 46a-71
The plaintiffs' final argument is that the hearing officer failed to decide the plaintiff, Budnik's claim pursuant to General Statutes § 46a-71, although the plaintiff specifically pleaded such a claim. The defendants argue that the hearing officer's omission does not violate the provisions of the Uniform Administrative Procedure Act ("UAPA").
Section 46a-71 provides "All services of every state agency shall be performed without discrimination based upon . . . sex . . . ." General Statutes § 46a-71 (a). "No state facility may be used in furtherance of any discrimination, nor may any state agency a party to any agreement, arrangement or plan which has the effect of sanctioning discrimination." General Statutes § 46a-71 (b). However, a "necessary element of a claim under. . . [the statute] is that the challenged regulation discriminate on the basis . . . [alleged]." Cameron v.Alander, 39 Conn. App. 216, 221, 664 A.2d 332 (1995). "[T]he burden is on the plaintiff to establish that she has been discriminated against on the basis. . . [alleged]. Only after the plaintiff makes such a prima facie case does the burden shift to the defendant to establish some justification for the discriminatory treatment." Id.
CT Page 6637
The interpretation of statutes presents a question of law.Connecticut Humane Society v. FOIC, 218 Conn. 757, 761,591 A.2d 395 (1991). Although the factual considerations and discretionary determinations of administrative agencies are to be given considerable weight by the courts, it is for the courts to expound and apply governing principles of law. Id., 762. However, it is the court's practice to accord great deference to the construction given a statute by the agency charged with its enforcement.Griffin Hospital v. Commission on Hospitals Health Care,200 Conn. 489, 496, 512 A.2d 199 (1986). Conclusions of law reached by agencies must stand if the court determines that they resulted from a correct application of the law to the facts found could reasonably and logically follow from such facts. New Haven v.FOIC, 205 Conn. 767, 774, 535 A.2d 1297 (1988).
To have sustained a claim under § 46a-71, the plaintiff, Budnik, would have had to show discrimination. The hearing officer unequivocally found that the defendant, UConn, did not discriminate. The hearing officer found no discrimination under the Public Accommodation Act. (ROR # 1, p. 10). The hearing officer found the weight standard did not discriminate against females. (ROR # 1, p. 15). Finally, the hearing officer found the evidence amply shows that the University did not break any law in dismissing the plaintiff, Budnik. (ROR # 1, p. 23). Furthermore, the hearing officer specifically stated that discrimination is so not evident that it was unnecessary to discuss the CHRO's Title IX claim. (ROR # 1, p. 23).
Therefore, it is evident that to the hearing officer, based on the evidence, the plaintiff failed to sustain the burden of demonstrating that the defendants discriminated. Even if she had met that burden, the hearing officer found that the defendants had a legitimate non-discriminatory reason for the weight restriction. (ROR # 1, p. 17). Furthermore, the hearing officer found that the plaintiff was not dismissed because of her weight, but her attitude. (ROR # 1, p. 23).
While the hearing officer may not have specifically addressed the § 46a-71 claim, it is evident from both the substantial evidence in the record, and the hearing officer's decision, that the plaintiff had failed to meet her burden to succeed under this claim. The hearing officer found no discrimination and that the plaintiff was dismissed because of her attitude. The requirements under General Statutes § 46a-71 were hardly satisfied. Therefore, CT Page 6638 the plaintiffs' appeal, based on the argument that the hearing officer failed to address the plaintiff, Budnik's claim under General Statutes § 46a-71, is unpersuasive.
Accordingly, for the foregoing reasons, the plaintiffs' appeal is dismissed.
Bishop, J.